[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 22-10581

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ROYSTIN DAVID,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20141-PCH-3

————————————

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Roystin David appeals his jury convictions for conspiracy to possess with intent to distribute a controlled substance and possession with intent to distribute a controlled substance. *See* 21 U.S.C. § 846; 21 U.S.C. § 841(a)(1). Mr. David argues that the district court abused its discretion in admitting certain exhibits and testimony—specifically text messages seized from Mr. David's phone and an officer's testimony that he had never previously seized this amount of drugs. Following a review of the record and the parties' briefs, we affirm.

**I**

On January 12, 2021, Mr. David and three co-defendants arrived at the Opa Locka Executive Airport on a private plane from St. Thomas in the U.S. Virgin Islands. When they landed, a Customs and Border Patrol Officer inspected their luggage and found cocaine weighing approximately 329 kilograms. In a post-*Miranda* statement, Mr. David denied knowing about the cocaine.

An agent seized Mr. David's cell phone as evidence. A search of the phone revealed several text messages between Mr. David and his co-conspirators, and some of these messages were introduced by the government as evidence that he knew about the drugs in his bags.

The first series of text messages were between Mr. David, Teshawn Adams, and Tevon Adams (two of Mr. David's co-defendants) in June of 2019. In these text messages they discussed "a line with a couple [of] buyers," a "set of buyers in New York," and getting their "own product." In a second series of text messages sent in September of 2019, all three individuals discussed how much profit they expected to make, and cutting out middlemen.

The third series of messages were between Mr. David and Teshawn Adams in February of 2020. Mr. Adams explained that he had a plan to invest in "bricks" that would make them millions. Mr. David responded, "that don't sound bad at all."

The fourth series of texts were from September of 2020. Mr. Adams texted Mr. David that "we need run up and steal some bricks," to which David replied, "who and when?" Mr. David sent another text to Mr. Adams suggesting that they "recruit a flight attendant" because "they go on the plane normally all the time" and are "less likely to be checked" by TSA.[1]

Before trial, the government moved to admit text messages from 2020–2021 into evidence. Mr. David opposed the government's motion and moved separately to exclude the text messages. The district court granted the government's motion and denied Mr. David's because the messages were directly relevant to the conspiracy.

---

[1] Another series of texts, from January of 2021, concerned "moving product."

At trial, the government introduced the text messages as well as the testimony of four federal agents, including CBP Officer Jay Erskine, who had stopped Mr. David and his co-defendants at the Opa Locka Executive Airport. Officer Erskine testified about his interactions with Mr. David and his co-conspirators and about finding the cocaine in the luggage. On redirect, the government asked Officer Erskine whether this was a "memorable seizure" of cocaine and how many times he had seized 300-plus kilograms of cocaine. Mr. David's attorney objected to the relevance of the question, but the district court overruled the objection, and Officer Erskine responded: "Never. That was the first time."

On appeal, Mr. David argues that the district court abused its discretion in admitting the text messages into evidence because they were too old and unrelated to the cocaine charges. He also argues that the district court erred in allowing Officer Erskine to testify that he had never previously seized more than 300 kilograms of cocaine.

## II

We review a district court's rulings on admission of evidence for an abuse of discretion. *See United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2009).

## III

"To convict a person of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1), the government is required to prove three elements: (1) knowledge; (2) possession; and (3) intent to distribute." *United States v. Hernandez*, 743 F.3d

812, 814 (11th Cir. 2014) (quotation marks omitted). "[T]he elements of the offense of conspiracy under 21 U.S.C. § 846 are: (1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means." *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998).

Mr. David argues that the text messages between June of 2019 and October of 2020 were too remote to be relevant to the narcotics charges and that they should be excluded as irrelevant prior bad acts under Federal Rule of Evidence 404(b). We disagree.

First, the text messages constituted direct evidence—and not other acts evidence under Rule 404(b)—that Mr. David and Mr. Adams were planning to import cocaine by way of a plane and make substantial amounts of money. The messages were central to the charged conspiracy because Mr. David and Mr. Adams discussed logistics for drug transports, potential buyers, and recruits. For example, in September of 2020, the two men discussed recruiting a flight attendant as a way to avoid security checks or conceal the cocaine. "Relevant direct evidence of a crime is always admissible unless it falls under a rule of exclusion." *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013). Mr. David has not pointed to any such rule.

Second, the text messages also constituted intrinsic evidence of the charged offenses, and as a result Rule 404(b) did not preclude their admission. They were, at the very least, an "integral and natural part of the account of the crime" and "necessary to complete

the story of the crime for the jury." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).[2]

Third, the fact that these text messages were sent approximately nineteen months and three months before the actual importation of the cocaine does not render them irrelevant or stale. Because the planning and execution of a drug importation scheme takes time, messages between the co-conspirators within two years of the crimes' commission are not too remote. Indeed, one of Mr. Adams' text messages to Mr. David in February of 2020 contemplates a lengthy scheme running into 2021: "Okay for the whole year we gotta invest all the money from our bricks. . . . So by next year [i.e., 2021] we [sic] going [sic] have over a hundred of our own . . . . [W]e going [sic] just live off the airport trips." D.E. 226 at 44.

## IV

With respect to the challenged testimony of CBP Officer Erskine, we also affirm.

First, Mr. David attempted on cross-examination to cast doubt on Officer Erskine's memory and recollection of the seizure at the Opa Locka Airport in January of 2021. Given that line of attack, it was not an abuse of discretion to allow the government to ask Officer Erskine on redirect examination if he had ever seized 300-plus kilograms of cocaine. His answer—that he had never

---

[2] Given our conclusion, we do not discuss admissibility under Rule 404(b) further.

seized that amount of cocaine—tended to suggest that this was a memorable interdiction that he would likely remember.

Even if the district court abused its discretion, we will not reverse if the error was harmless. *See United States v. Augustin*, 661 F.3d 1105, 1123 (11th Cir. 2011). An error is harmless unless, in light of the record as a whole, there is a reasonable likelihood that it had a substantial influence on the outcome of the proceeding. *See id. See also* Fed. R. Crim. P. 52(a) (an error that "does not affect substantial rights" is harmless and "must be disregarded"). Here, any error was harmless because the jury already knew that the cocaine seized was over 300 kilograms. We are confident that hearing the weight of the cocaine again from Officer Erskine did not affect the jury's verdict.

## V

We affirm Mr. David's convictions.

**AFFIRMED.**